**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 16-355** |
| | : | |
| **LEROY FRAZIER** | : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                                    **November 17, 2020**

Sentencing judges must carefully apply factors set by Congress in delivering a sentence tailored to the conviction and sentencing policy. We expect the convicted person to serve the full sentence. But we now face a COVID-19 pandemic. Incarcerated persons in close physical proximity viewing themselves as particularly vulnerable to COVID-19 may ask the Bureau of Prisons to modify our criminal sentence through home confinement or compassionate release. If the Bureau denies the request, the incarcerated person may ask his sentencing judge to modify the sentence. To do so, we must find, among other things, extraordinary and compelling reasons for compassionate release and the incarcerated person will not present a risk to the safety of the community upon release. We today study an incarcerated man's request for compassionate release or home confinement filed approximately six months before finishing a seventy-two-month sentence for possessing a gun following an extensive criminal history. He argues risk to his health while incarcerated at FCI-McKean in this COVID-19 era is an extraordinary and compelling reason to release him because of the removal of his spleen and part of a lung almost ten years ago. He presents no personal medical issues or multiple COVID cases in his facility. He may be at risk for COVID-19 like many incarcerated persons in close proximity by necessity, but he offers no evidence of being at greater risk of harm due to his medical condition. His

extensive criminal history, including this conviction while on parole, also presents an unacceptable risk to the safety of the community if released before serving his full sentence. We deny his motion for home confinement or compassionate release.

I.   **Facts**

The Commonwealth of Pennsylvania arrested, charged, and convicted Leroy Frazier of several crimes involving narcotics and guns beginning in his teenage years. The felony convictions preclude him from possessing a gun.

Someone shot then-twenty-two-year-old Leroy Frazier in his abdomen in January 2011, damaging several of his internal organs. Mr. Frazier immediately underwent surgery, and doctors removed his spleen and part of his left lung. Doctors also required a stent for about a year and a half after his surgery due to the kidney damage. Released from state prison in December 2014, the Commonwealth continued supervising him on parole scheduled to end in October 2018. In August 2015, a car accident injured his back.[1]

On March 3, 2016, Philadelphia narcotics officers arrested parolee Mr. Frazier for cocaine possession and possessing a gun as a convicted felon. On April 19, 2017, our jury found Mr. Frazier guilty of unlawfully possessing a gun.[2] The Sentencing Commission recommended 151 to 188 months in custody, but Congress precluded us from sentencing Mr. Frazier for longer than 120 months in custody for the convicted felon in possession offense.[3] On August 14, 2017, we varied downward from the 120-month recommended sentence and instead sentenced Mr. Frazier to seventy-two months in custody with credit for time served followed by three years of supervised release.[4]

The Bureau of Prisons is presently holding Mr. Frazier in Federal Correctional Institution – McKean ("FCI McKean"). Taking into account credit for time served, Mr. Frazier has served

approximately sixty-four months, or 88.89%, of his sentence.[5] His release date is set for April 13, 2021, but he is subject to an outstanding detainer from the Pennsylvania Board of Probation and Parole.[6] Mr. Frazier has not committed a disciplinary infraction and has participated in several educational and vocational programs while incarcerated.[7]

### A.   Mr. Frazier's present health condition.

Mr. Frazier's medical records confirm he is generally a healthy thirty-two-year-old. His medical records confirm he struggles with epilepsy and chronic lower back pain.[8] He has not complained of or sought treatment for complications while incarcerated arising from his spleen removal, his lung removal, his kidney damage, or epilepsy. He takes Amitriptyline for lower back pain.

### B.   Mr. Frazier's plan if granted compassionate release.

Mr. Frazier planned to move in with his wife and their two children at their Baltimore home upon compassionate release. He claimed his wife would support him financially and add him to her medical plan until Mr. Frazier found employment.

### C.   COVID-19 affecting incarcerated persons.

Mr. Frazier details his understanding of the medical view on "coronavirus disease 2019," known as COVID-19. As we understand today from our own review, COVID-19 is a respiratory disease spreading mainly through respiratory droplets produced when an infectious person, even those who are asymptomatic, talks, coughs, or sneezes.[9] The disease is also spread through airborne transmission.[10] "Spread is more likely when people are in close contact with one another (within about 6 feet)."[11]

COVID-19 poses a serious global public health risk. As of November 17, 2020, the Centers for Disease Control and Prevention reported a total of 10,984,398 cases of COVID-19 in

the United States with 245,470 total deaths caused by the virus.[12] People of any age with the following conditions *are* at increased risk of severe illness from COVID-19: cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 kg/m2 or higher); serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; pregnancy; a history of smoking; and Type 2 diabetes mellitus.[13] People of any age with the following conditions *might* be at an increased risk for severe illness from COVID-19: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); neurologic conditions (like dementia); liver disease; a body mass index greater than 25 kg/m$^2$; pulmonary fibrosis; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[14]

Mindful correctional facilities face unique challenges in controlling the transmission of COVID-19, the Centers for Disease Control has issued guidance to prisons and correctional facilities to help them prevent the spread of COVID-19.[15] Following this guidance, the Bureau of Prisons adopted aggressive safety measures, assuring "maintaining safety and security of [its] institutions is [its] highest priority."[16] These measures confirm limited infection at FCI McKean where Mr. Frazier is incarcerated. As of November 17, 2020, FCI McKean reports it tested 291 of its 841 inmates for coronavirus and only seven tests have been positive throughout the entire crisis.[17] There is only one active case to our knowledge in the entire facility.[18] No staff member

of FCI McKean has ever tested positive for COVID-19, and we are not aware of a death from COVID-19 linked to FCI McKean.[19]

### D. Mr. Frazier exhausted internal remedies.

Mr. Frazier exhausted his administrative remedies.[20] Mr. Frazier requested relief with his Unit Counselor on May 14, 2020.[21] The Unit Counselor denied his request a week later citing the Pennsylvania detainer and Mr. Frazier's high recidivism risk level.[22] Without delay, Mr. Frazier appealed the denial to Warden Bradley M. Tate.[23] The warden denied his appeal on June 9, 2020.[24] Mr. Frazier filed an appeal with the Administrative Remedy Coordinator Northeast Regional Office.[25] On August 11, 2020, the Administrative Remedy Coordinator Northeast Regional Office informed Mr. Frazier they received his appeal on June 22, 2020 and they would respond by July 22, 2020.[26] Mr. Frazier moved for relief on September 21, 2020, two months after the July 22, 2020 response deadline, and Mr. Frazier had not received a response from the Administrative Remedy Coordinator regarding his appeal.

## II. Analysis

We construe Mr. Frazier's *pro se* motion as seeking home confinement under the CARES Act and for compassionate release under First Step Act, 18 U.S.C. § 3582(c)(1)(A). We deny his motion for home confinement under the CARES Act because we lack the authority to transfer him to home confinement. We deny his motion for compassionate release under the First Step Act because Mr. Frazier does not present an "extraordinary and compelling reason" for release.

### A. We cannot transfer Mr. Frazier to home confinement or review the Bureau of Prisons' administrative decision under the CARES Act.

We deny Mr. Frazier's request for relief to the extent he seeks early release to home confinement under the CARES Act. "District Courts considering the CARES Act § 12003 and the Attorney General's directive consistently conclude that the determination of which inmates

5

qualify for home confinement under the CARES Act is with the BOP Director."[27] The CARES Act allows the increased use of home confinement by the Bureau of Prisons, and does "not give courts control over an inmate's place of incarceration or the BOP's exercise of its placement authority."[28] We deny Mr. Frazier's motion for release to home confinement under the CARES Act.[29]

### B. We deny Mr. Frazier's motion for compassionate release.

We deny Mr. Frazier's motion for compassionate release as now available for our immediate review following his exhausting internal remedies under the First Step Act.[30]

Congress allows us to reduce our sentence through compassionate release if we determine (1) the incarcerated movant meets administrative exhaustion requirements, (2) "extraordinary and compelling reasons" warrant a reduction,[31] (3) the reduction is "consistent with any applicable policy statements issued by the Sentencing Commission"; and, (4) the applicable sentencing factors under 18 U.S.C. §3553(a) warrant a reduction.[32] The applicable policy statements issued by the Sentencing Commission urge us to consider whether Mr. Frazier would be a danger to the community if released.[33]

As there is no dispute Mr. Frazier exhausted his administrative remedies, we assess whether Mr. Frazier presents an extraordinary and compelling reason for release, whether he presents a danger to the community, and whether the sentencing factors warrant a reduction.

### 1. Mr. Frazier does not establish extraordinary and compelling reasons based on his fear of contracting COVID-19 at FCI McKean.

Mr. Frazier argues he should be released because the 2011 removal of his spleen and a portion of his lung render him more susceptible to fighting a potential COVID-19 infection.[34] His medical records further reveal he suffers from epilepsy and chronic lower back pain.[35]

The United States argues Mr. Frazier's health conditions do not present a basis for release because neither asplenia nor partial lung removal appears explicitly on the Centers for Disease Control's list of conditions increasing a person's susceptibility to a serious COVID-19 infection.[36] We find the United States' reading of the Centers for Disease Control's guidelines too restrictive. The Centers for Disease Control's guidelines state, "[t]he below list of underlying medical conditions is not exhaustive and only includes conditions with sufficient evidence to draw conclusions . . . the list may not include every condition that might increase one's risk for developing severe illness from COVID-19, such as those for which evidence may be limited or nonexistent (*e.g.*, rare conditions)."[37] We have seen the list of conditions continuously evolve since we began receiving compassionate release motions citing COVID-19 risk earlier this year. The Centers for Disease Control's list includes some broadly defined conditions including "immune deficiencies" and pulmonary fibrosis, which it defines as "having damaged or scarred lung tissue."[38] As scientists consider asplenia a rare immune deficiency[39] and as Mr. Frazier underwent surgery on his lung, we do not read the Centers for Disease Control's omission of Mr. Frazier's specific condition as foreclosing his request for release.

But Mr. Frazier's situation still does not present an extraordinary and compelling reason for his release. We recognize judges reach different results when evaluating whether asplenia,[40] partial lung removal,[41] and/or epilepsy[42] provide a basis for compassionate release during the COVID-19 pandemic. In some of these cases, judges acknowledged the conditions are serious, but ultimately denied release based on the risk presented in the individual facility housing the petitioner. For example, in *United States v. Vence-Small*, Judge Meyer held, "[i]n light of [the petitioner's] splenectomy, diabetes, hypertension, and age, it is undisputed that [the petitioner] is at a much greater risk than the average person to contract the virus as well as to experience very

7

serious or lethal complications" but he denied compassionate release because "[t]here [was] no evidence yet that COVID-19 has infected any staff or inmates at [the petitioner's] facility." [43] He explained, "[w]hat is missing [from the petition] . . . is evidence that [the petitioner] is *presently* at more than a negligible risk of contracting the virus or that she would be significantly safer from the virus if she were granted home confinement as she proposes."[44] In *United States v. Dalton*, Judge Goodwin denied compassionate release for a petitioner with asplenia and hepatitis C when the petitioner could cite only one active COVID-19 case at her facility.[45]

Judges also consider whether the petitioner's conditions remained stable throughout incarceration and whether the petitioner enjoyed overall good health notwithstanding his or her conditions. For example, in *United States v. Vennes*, Judge Magnuson denied compassionate release where the petitioner suffered from "hypertension, hyperlipidemia, psoriasis, psoriatic arthritis, rheumatoid arthritis, [and] obesity," had a pacemaker, and had one of his lungs removed because the Bureau of Prisons' doctor determined his conditions were stable.[46]

We are also mindful Mr. Frazier has served almost ninety percent of his sentence. We commend Mr. Frazier on avoiding disciplinary concerns while incarcerated. The Sentencing Commission defines extraordinary and compelling reasons to include serving seventy-five percent of a sentence if the incarcerated person is at least sixty-five years old and experiencing serious deterioration in physical or mental health due to the aging process.[47] Mr. Frazier is only thirty-two-years old. He is not experiencing serious deterioration of his physical or mental health. He does not qualify as presenting extraordinary and compelling reasons under these considerations. We are not persuaded to reduce our carefully considered sentence (where we varied from a recommended sentence of 120 months) absent some present medical risk under the conditions at FCI-McKean.

We deny Mr. Frazier's request for compassionate release given his relatively young age, his overall good health, FCI McKean's success at curbing the spread of the virus to date, and the Commonwealth's detainer on Mr. Frazier. While we do not intend to minimize the seriousness of Mr. Frazier's conditions, his medical records confirm no complications from these conditions during the more than five years of his incarceration. These records confirm Mr. Frazier is a relatively healthy thirty-two-year-old man. While we acknowledge the unique challenges COVID-19 presents to prisons, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [Bureau of Prisons]' statutory role, and its extensive and professional efforts to curtail the virus's spread."[48] At FCI McKean, the Bureau of Prisons' "professional efforts to curtail the virus's spread" appear to mitigate COVID-19 to date. Only seven inmates tested positive for COVID-19 in the past several months and currently there is only one active case at the facility. No staff members have ever tested positive. Mr. Frazier does not persuade us he "would be significantly safer"[49] if released given the low incidence of COVID-19 at FCI McKean. Mr. Frazier also has an active detainer from the Commonwealth and if released from the Bureau of Prisons, could face immediate re-incarceration.

### 2. Mr. Frazier also poses a risk of danger to the community.

Even if we found Mr. Frazier presents an extraordinary and compelling reason based on his medical condition, Congress requires we consider whether Mr. Frazier presents "a danger to the safety of any other person or to the community" before we reduce a carefully considered sentence. Mr. Frazier fails to show he warrants a sentence reduction.

The Sentencing Commission's policy statement, while not binding, nonetheless offers helpful guidance and provides for granting a sentence reduction only if "[t]he defendant is not a

9

danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[50] Section 3142(g) sets out factors we must consider when deciding whether to release a defendant pending trial.[51] These factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or "involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[52]

These factors weigh against releasing Mr. Frazier. Mr. Frazier has a long criminal history spanning fifteen years. The Commonwealth arrested him multiple times for crimes involving the manufacture and distribution of drugs and the unlawful possession of guns. After serving time in prison for those crimes, he possessed a gun while on parole. The weight of the evidence against him led our jury to convict him of unlawfully possessing a firearm as a felon. We agree with the Bureau of Prisons' assessment Mr. Frazier's recidivism risk is too high for us to order compassionate release notwithstanding his good behavior while incarcerated. Mr. Frazier's long criminal history, including criminal conduct while on parole, compels us to find he presents a danger to his community.

As we find Mr. Frazier does not present an "extraordinary and compelling" reason for compassionate release and presents a danger to his community, we need not assess the 18 U.S.C. §3553 factors.

## III. Conclusion

We deny Mr. Frazier's motion for compassionate release without prejudice and we deny his motion for home confinement with prejudice.

---

[1] ECF Doc. No. 87; July 24, 2017 Presentence Investigation Report, ¶ 55.

10

---

[2] ECF Doc. No. 73. The United States dismissed a cocaine possession count before trial. ECF Doc. Nos. 66, 67.

[3] 18 U.S.C. § 922(g)(1).

[4] ECF Doc. No. 95.

[5] ECF Doc. No. 134 at 4.

[6] ECF Doc. No. 124, Attachment 2.

[7] ECF Doc. No. 124 at 9; ECF Doc. No. 134.

[8] ECF Doc. No. 134 at 5.

[9] Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last visited Nov. 17, 2020).

[10] *Id.*

[11] Centers for Disease Control and Prevention, *Coronavirus 2019 Basics*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ffaq.html#Coronavirus-Disease-2019-Basics (last visited Nov. 17, 2020). Mr. Frazier's supplement to his motion focuses on the way COVID-19 attacked the body. He writes, "[t]he infection starts in the lungs because breathing is the easiest way for the virus to enter the body. Once it infects the lung cells and begins to destroy them, it travels into the bloodstream. There, it infects endothelial cells, causing endothelitis." ECF Doc. No. 133 at 2-3. He then explains how this condition leads to clotting, which can exacerbate the effects of COVID-19 and make the disease more difficult to treat. *Id.*

[12] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Nov. 17, 2020).

[13] Centers for Disease Control and Prevention, *People Who Need Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 16, 2020) (emphasis added).

[14] *Id.* (emphasis added).

[15] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Nov. 17, 2020).

---

[16] https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last visited Nov. 17, 2020).

[17] *See* https://www.bop.gov/coronavirus (last visited Nov. 17, 2020).

[18] *Id.*

[19] *Id.*

[20] The United States does not dispute Mr. Frazier exhausted his administrative remedies.

[21] ECF Doc. No. 124, Attachment 2.

[22] *Id.*

[23] ECF Doc. No. 124, Attachment 3.

[24] *Id.*

[25] ECF Doc. No. 124, Attachment 4.

[26] *Id.*

[27] *United States v. Delacruz*, No.17-77, 2020 WL 3405723, at *5 (M.D. Pa. June 19, 2020) (collecting cases); *see also United States v. Cruz*, No. 95-204, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020) ("the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director.").

[28] *Delacruz*, 2020 WL 3405723, at *5; *see also United States v. Komoroski*, No. 17-156, 2020 WL 3265459, at *10 (M.D. Pa. June 17, 2020) ("the court has no authority to direct the BOP to place [defendant] in home confinement and the determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director") (collecting cases); *United States v. Mansaray*, No. 13-236, 15-526, 2020 WL 3077184, at *3 (E.D. Pa. June 10, 2020) ("Congress did not provide the Courts with the authority to review the BOP Director's decision whether to release inmates into home confinement at an earlier time under the CARES Act") (collecting cases).

[29] In *Delacruz*, Judge Mariani found "an inmate requesting to serve the remainder of his sentence in home confinement is seeking relief as to how his sentence is executed and the only avenue which would allow him to proceed in federal court is a petition under 28 U.S.C. § 2241." *Delacruz*, 2020 WL 3405723, at *5 (citing *United States v. Donahue*, No. 11-33, 2020 WL 3001393, at *5 (M.D. Pa. June 4, 2020); *United States v. Serfass*, No. 15-39, 2020 WL 1874126, at *3 (M.D. Pa. Apr. 15, 2020)).

[30] The First Step Act, passed by Congress in December 2018, amended section 3582(c)(1)(A) "to allow prisoners to directly petition courts for compassionate release, removing the [Bureau of Prisons'] exclusive 'gatekeeper' role." *United States v. Rodriguez*, No. 03-271, 2020 WL

12

---

1627331, at *2 (E.D. Pa. Apr. 1, 2020) (footnote omitted). Under the Act, prisoners have "two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the [Bureau of Prisons'] decision not to file a motion, or (2) file a motion after 'the lapse of 30 days from the receipt . . . of such a request' by the warden of the defendant's facility, 'whichever is earlier.'" *Id.* at * 3 (citing 18 U.S.C. § 3852(c)(1)(A)).

[31] Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines outlines circumstances constituting "extraordinary and compelling reasons":

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serios deterioration in physical or mental health because of the aging process; and (3) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the [Bureau of Prisons], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

[32] 18 U.S.C. § 3582.

---

[33] *See, e.g.*, *United States v. Slone*, No. 16-400, 2020 WL 3542196, at *8-9 (E.D. Pa. June 30, 2020).

[34] ECF Doc. No. 124 at. 2.

[35] ECF Doc. No. 134 at 5.

[36] *Id.* at 14-15.

[37] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 16, 2020).

[38] *Id.*

[39] Jacqueline D. Squire MD, Mandel Sher MD, *Asplenia and Hyposplenism: An Underrecognized Immune Deficiency*, 40 Immunology and Allergy Clinic of North America 471 (2020).

[40] *United States v. Jones*, No. 12-38, 2020 WL 3871084 (W.D. Pa. July 8, 2020) (denying petitioner with asplenia's motion for compassionate release); *United States v. Ferrell*, No. 16-259-TWP-MJD01, 2020 WL 3871210 (S.D. Ind. July 8, 2020) (denying compassionate release where inmate's "spleen was removed in 2005 due to a gunshot wound, he takes medication for hypertension, he is prediabetic, and he has a collapsed lung" because while the Court considered these conditions "serious", the inmate presented a danger to the community); *United States v. Holroyd*, No. 682 WDA 2019, 2020 WL 2735554 (D.D.C. May 26, 2020) (finding defendant's asplenia and hypertension did not present 'extraordinary and compelling reasons' for reducing his sentence to time served); *United States v. Wiseman*, No. 19-99, 2020 WL 2487199 (M.D. Tenn. May 14, 2020) (holding defendant's asplenia not a basis to release defendant); *United States v. Arroyo*, EP-6-CR-479-PRM-1, 2020 WL 3512964 (W.D. Tex. June 16, 2020) (release granted near end of sentence based on hereditary spherocytosis, which required defendant's spleen be removed at an early age, leaving him immunocompromised).

[41] *United States v. Mueller*, No. 08-139, 2020 WL 3791548 (E.D. Pa. July 7, 2020) (granting compassionate release to sixty-four-year old petitioner who had 90% of left lung removed, suffered from hypertension, and had served twelve years of his sentence); *United States v. Newlin*, No. 17-164, 2020 WL 5046952 (N.D. Ind. Aug. 26, 2020) (denying compassionate release where petitioner had portion of lung removed, heart disease, high blood pressure, and subcutaneous emphysema).

[42] *United States v. Bandrow*, No. 17-20077, 2020 WL 4050242 (E.D. Mich. 2020) (granting compassionate release where petitioner suffered from asthma, epilepsy, and hematuria); *United States v. Vietor*, No. No. 6:18-cr-06206, 2020 WL 2833010 (W.D. N.Y. June 1, 2020) (denying compassionate release motion of epileptic inmate).

[43] *United States v. Vence-Small*, No. 18-31, 2020 WL 221226, at *2 (D. Conn. May 7, 2020).

---

[44] *Id.*

[45] *United States of America v. Dalton*, No. 18-245, 2020 WL 6568863 (S.D.W.Va. Nov. 9, 2020).

[46] *United States v. Vennes*, No. 11-141(1), 2020 WL 3056654 (D. Minn. June 9, 2020).

[47] U.S.S.G. § 1B1.13, Application Note 1(B).

[48] *United States v. Raia*, 354 F.3d 594, 596 (3d. Cir. 2020).

[49] *Vence-Small*, 2020 WL 221226, at *2.

[50] *U.S. v. Clausen*, No. 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (citing *Rodriguez*, 2020 WL 1627331, at *11 (quoting U.S.S.G. § 1B1.13(2))).

[51] *Id.*

[52] *Id.* (citing 18 U.S.C. § 3142(g)(1)–(4)).